UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ANTONIO THOMAS

VERSUS

WARDEN DENNIS GRIMES, ET AL.

CIVIL ACTION

NO. 18-77-JWD-EWD

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss* (Doc. 11) filed by Defendants Warden Dennis Grimes and Deputy Marvin Daniels.[1] Plaintiff Antonio Thomas opposes the motion. (Doc. 15.) Defendants have filed a reply. (Doc. 18.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is denied.

**I.     Relevant Factual Allegations**

The following allegations are taken from *Plaintiff's First Amended Complaint Under 42 USC 1983* ("*FAC*") (Doc. 5). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

On or about May 4, 2018, Plaintiff Antonio Thomas was incarcerated at the East Baton Rouge Parish Prison ("EBRPP"). (*FAC* ¶ 10, Doc. 5.) He was awaiting trial on a burglary charge. (*Id.*) "Plaintiff Thomas is what is called a 'High Risk Sexual Victim' under the Prison Rape Elimination Act, the Federal Statute governing sexual violence in jails and prisons." (*Id.* ¶ 11.) Because of Plaintiff's age (18), his then size (5' 10", 138 lbs.), and his "mental makeup

---

[1] Sheriff Sid Gautreaux was also named a defendant in his official capacity. (Doc. 5 ¶ 7.) However, Sheriff Gautreaux did not join in this motion. (Doc. 11.) Further, Plaintiff only asserts state law claims against Gautreaux. (*See* Doc. 5 ¶ 7.)

(mildly mentally handicapped because of Fetal Alcohol syndrome suffered as a child)," Plaintiff "is at a high risk of being a victim of sexual violence in prison." (*Id.*) Plaintiff alleges:

> Special care must be taken to protect these High Risk Sexual Victims from the High Risk Sexual Predators found in prison. Upon intake, the warden's staff interviews prisoners and categorizes them according to their status regarding sexual violence. Despite these concerns, he was placed in a multi room dorm with adult offenders. On May 4, 2018, he was viciously attacked by inmates in his dorm.

(*Id.*)

An inmate named Girbaud Eisley was also housed in the area of the prison in which Plaintiff was placed. (*FAC* ¶ 12, Doc. 11.) Eisley "was in jail awaiting trial for the brutal rape, battery and robbery of a woman at the Hollywood Casino women's bathroom in Baton Rouge in 2015." (*Id.*) Plaintiff claims: "This inmate would be categorized as a 'High Risk Sexual Predator', and special care must be taken to keep him away from high risk sexual victims to avoid sexual violence. On information and belief, Girbaud Eisley had been categorized as a High Risk Sexual Predator by the Warden's staff." (*Id.*)

Warden Grimes was the "warden at East Baton Rouge Parish Prison" and was "responsible for security of the prison, during the events that are the subject of this lawsuit[.]" (*FAC* ¶ 5, Doc. 5.) Plaintiff makes the following allegations about Grimes and Daniels' knowledge of the risk Eisley posed:

> On information and belief, the Warden knew or should have known that he was putting a high risk plaintiff in the same line as Eisley, known as a violent rapist. On information and belief, neither the Warden nor Deputy Daniels took any steps to protect Plaintiff from Eisley. This is in violation of well established prison regulations and best practices. . . .
>
> On information and belief, the Sheriff and the Warden knew or should have known that offenders like Thomas are at an increased risk of sexual assault from the general population, yet the Warden and the Sheriff took no steps to protect this plaintiff from sexual assault from Eisley, placing plaintiff in a two-man cell with a High Risk Sexual Predator. . . .

> On information and belief, the Warden knew or should have known, based on his position and training, that Eisley was a sexual predator, and was therefore a heightened threat of sexual (sic) assaulting vulnerable inmates, like a young, underweight slightly mentally handicapped teenager like plaintiff. . . .
>
> Even though the Warden knew or should have known of the extreme risks of sexual assault by Eisley on a high-risk sexual victim like the plaintiff, Warden Grimes allowed plaintiff to be housed with Eisley. . . .

(*Id.* ¶¶ 13–16.)

On May 4, 2018, Plaintiff "was viciously attacked by inmates in his dorm." (*Id.* ¶ 17.) According to the *FAC*:

> On information and belief, among the attackers was Girbaud Eisley. Plaintiff suffered a broken nose and bruises and sought treatment from OLOL hospital. When he returned to prison, he was sent back to the cell with Girbaud Eisley, his attacker. The results were predictable. Within two weeks, Eisley raped plaintiff. After the rape, he was told if he told anyone, he would be murdered.

(*Id.*)

Despite his fear, Plaintiff "smuggled a note out of his cell and got it to a deputy informing him of the rape." (*FAC* ¶ 18, Doc. 5.) Deputies separated Plaintiff from Eisley and took Plaintiff to the infirmary. (*Id.*) Deputies also informed the police of the crime, at which time "the Sheriff had notice of this rape." (*Id.*)

Plaintiff alleges on information and belief that the rape was confirmed at the hospital when Eisley's DNA was found. (*FAC* ¶ 19, Doc. 5.) Plaintiff alleges:

> Plaintiff suffered a fractured bone in his rectum area, along with the obvious physical and psychological trauma of being sodomized. He was given anti-HIV medication and told the hospital would check in six months to confirm he was not infected with HIV since HIV has a six-month incubation period. . . . Thomas was confused by the anti-HIV medication and believed he was infected with the virus. This turned out to be an incorrect belief. As of today's filing, Thomas is HIV negative.

(*Id.* ¶¶ 19–20.)

3

Plaintiff asserts the following § 1983 claims against Grimes and Daniels:

> Defendant Daniels knew or should have known that Thomas had just been attacked by Eisley, and that Plaintiff had had his nose broken in the attack; and that Eisley was a sexual predator, but he failed to protect Plaintiff and prevent the rape, in violation of Plaintiff's Eighth and Fourteenth Amendments to the US Constitution. . . .
>
> Defendant Warden Grimes knew that he had a legal obligation to protect plaintiff and other prisoners from assault and sexual attack and knew or should have known that his actions and omissions created a substantial risk of serious injury to Plaintiff. With deliberate indifference to Mr. Thomas' personal safety and federally protected rights, Defendant Grimes failed to protect him from substantial risk of serious harm, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983. . . .
>
> The deprivations of Mr. Thomas' rights described herein constitute a risk of harm so grave that it violated contemporary standards of decency. No reasonable prison official would think it was acceptable to send a prisoner like plaintiff into a two man cell with a predator like Eisley, especially after the May 4th attack on plaintiff.

(*Id.* ¶¶ 21–23.) Plaintiff also asserts claims under state law that are not at issue in this motion. (*Id.* 24.)

Plaintiff seeks a variety of damages for his physical and mental injuries, including punitive damages and attorney's fees. (¶¶ 25–27.)

## II. Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant

4

evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III. Discussion

#### A. Parties' Arguments

##### 1. Defendants' Memorandum in Support (Doc. 11-1)

Defendants maintain that Plaintiff's allegations are "nothing more than conclusory statements, legal conclusions, and formulaic recitations of the elements of a cause of action" which are insufficient under Rule 12(b)(6) standards. Defendants cite *Robertson v. LeBlanc*, No. 13-171, 2014 WL 688979 (M.D. La. Feb. 20, 2014), as authority for the inadequacy of Plaintiff's allegations. Plaintiff must allege that officials were aware that the "offending co-inmate posed a specific threat to plaintiff and that those officials consciously disregarded that known threat." (Doc. 11-1 at 8 (citing *Robertson*).) Plaintiff alleges no personal involvement by these Defendants in the assignment of Plaintiff to the cell with Eisley, and Plaintiff fails to allege how these Defendants failed to protect him. Plaintiff's allegations of Grimes and Daniels' knowledge are entirely conclusory, as there is no specific allegation of how these Defendants had such knowledge. Deliberate indifference requires more than an allegation that the Defendants should have known of the risk, and Plaintiff's allegation of interviews from staff is inadequate. Further, the *FAC* fails to overcome qualified immunity for these Defendants. Lastly, if all federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims.

##### 2. Plaintiff's Opposition (Doc. 15)

Plaintiff responds:

> The Defendants argue that this mentally handicapped plaintiff should understand the inner working of the prison bureaucracy and be able to identify which prison official made the decision to place Plaintiff in a cell with Eisley without the benefit of any fact discovery. Then Defendants filed a motion asking the Court to ban discovery from taking place. Like all wardens in America, the Warden knows about [Prison Rape Elimination Act]. He is in charge of the prison and signs off on

housing assignments, including Plaintiff's, and Daniels, the guard, put Plaintiff in the two-man cell with a predator. (sic) Plaintiff simply argues that the if (sic) Warden Grimes didn't know, he **should know** because PREA requires him to know.

(Doc. 15 at 1.)

Plaintiff asserts that the rape was sufficiently serious to constitute an Eighth Amendment violation and that "no reasonable prison guard or warden would put a High-Risk Sexual victim in the same cell as a High-Risk Sexual Predator because Federal Law tells them to screen all prisoners to identify victims and predators, so this will not happen." (Doc. 15 at 1.) Plaintiff maintains that Defendants knew that Eisley was "a sexual predator and Plaintiff was a victim," yet they were housed together. (Doc. 15 at 1.)

Plaintiff points to a number of key facts in support of his motion, including (1) Plaintiff's status as a "High Risk Sexual Victim" under the PREA; (2) Eisley's status as a "High Risk Sexual Predator"; (3) Warden's knowledge that he put a high risk plaintiff near Eisley; (4) Plaintiff's May 4, 2018, attack at the hands of Eisley; (5) Daniel's knowledge of the attack, and (6) the Warden's knowledge of the "extreme risks of sexual assault by Eisley on a high-risk sexual victim like the Plaintiff and allowing Plaintiff to be housed with Eisley." (Doc. 15 at 2–3.)

Plaintiff also quotes PREA regulations on employee training and contends that "[n]o reasonable jail official, having been trained under the PREA could say he did not know that a predator and a victim should not share a jail cell." (Doc. 15 at 5.) After citing the relevant law, Plaintiff concludes:

> Plaintiff was raped. He is young, new to adult prison system and mildly mentally retarded. He was or should have been assessed as a High Risk Sexual Victim under the Prison Rape Elimination Act. The rapist is awaiting trial for a rape. The rapist should have been assessed as a High Risk Sexual Predator. No reasonable jail official would put a Sexual Predator in a two-man cell with a High Risk Sexual Victim. And yet we know it happened. On information, Grimes and Daniels both

7

> have been trained in PREA. As Warden, Grimes blesses all housing assignments, including this one. Daniels put Thomas in the cell with the predator. . . . All well pleaded allegations must be taken as fact for this pleading. This case must go forward to gain the fact discovery to show exactly how this tragedy occurred and exactly who else is responsible. Plaintiff prays that Defendant's motion to dismiss be denied and that a status conference be ordered to set a scheduling order and discovery.

(Doc. 15 at 9.)

### 3. Defendants' Reply (Doc. 18)

Defendants largely repeat themselves in reply. They contend that Plaintiff has not alleged that they were aware of a specific threat to plaintiff yet consciously disregarded that risk. Further, Plaintiff does not allege any personal involvement by the Defendants in Plaintiff's assignment to Eisley's cell or, for that matter, how Defendants failed to protect Plaintiff. Plaintiff's few allegations are conclusory and do not specify how Daniels had knowledge. Further, Plaintiff fails the second part of the qualified immunity analysis, as he has not pled facts showing that Defendants' conduct was objectively unreasonable in light of clearly established law.

As to the PREA regulations, Plaintiff does not allege all criteria for categorizing himself as a High Risk Victim, nor does he allege how Defendants knew that Plaintiff had a mild mental handicap. "High Risk Sexual Predator" is not defined in the regulations, and, at any rate, Plaintiff does not allege how Defendants would have classified Eisley as such when he was only accused of rape, not convicted.

Plaintiff's argument in the Opposition that the Warden "signs off on or blesses housing assignments" and that Daniels "put Plaintiff in the two-man cell with Eisley" is not in the Complaint and thus cannot be considered.

Lastly, Plaintiff's claim would fail to satisfy the requirements of supervisor liability.

8

## B. Legal Standards

### 1. Qualified Immunity

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless

the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).

Further, Fifth Circuit case law is clear on discovery and qualified immunity. " 'One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive.' " *Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). " 'Consequently, the [Fifth Circuit] has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.' " *Id.* at 485 (quoting *Backe*, 691 F.3d at 648). "[A] district court must first find 'that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). " 'Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.' " *Id.* (quoting *Backe*, 691 F.3d at 648). " 'After the district court finds a plaintiff has so pleaded, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." ' " *Id*. (quoting *Backe*, 691 F.3d at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987))).

### 2. Failure-to-Protect Standard

Plaintiff asserts a failure-to-protect claim under the Eighth and Fourteenth Amendment. The standard under both amendments is the same. *See Hare v. City of Corinth*, 74 F.3d 633, 650

(5th Cir. 1996). And both parties agree that the applicable standard comes from *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In *Farmer*, the Supreme Court recognized that "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.' " *Id.*, 511 U.S. at 834, 114 S. Ct. at 1977. "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation omitted). Second, "a prison official must have a 'sufficiently culpable state of mind.' In [these] cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id.* (citations omitted).

"Deliberate indifference" means that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*, 511 U.S. at 837, 114 S. Ct. at 1979. The Supreme Court recognized in *Farmer*:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, cf. Hall 118 (cautioning against "confusing a mental state with the proof of its existence"), and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. Cf. LaFave & Scott § 3.7, p. 335 ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of").

*Id.*, 511 U.S. at 842–43, 114 S. Ct. at 1981–82.

*Farmer* also explained, "Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific

11

prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843, 114 S. Ct. at 1982.

*Farmer* continued:

> The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter . . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead . . . would leave their beds and spend the night clinging to the bars nearest the guards station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

*Id.*, 511 U.S. at 843–44, 114 S. Ct. at 1982.

"In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982–83. "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety[.]' . . . Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*, 511 U.S. at 844–45, 114 S. Ct. at 1983. "The standard of deliberate indifference is high. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

### C. Analysis

The key question for this motion is whether Plaintiff has adequately alleged that Defendants had knowledge of the substantial risk of harm Plaintiff faced. Two points of law are critical to the Court's analysis.

First, there is the standard for a Rule 12(b)(6) motion. The key question is, after "factual allegations are identified, drawing on the court's judicial experience and common sense, . . . whether those facts, which need not be detailed or specific, allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Diamond Servs.*, 2011 WL 938785, at *3 (citing *Iqbal*, 556 U.S. at 678). Again:

> The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Id.* While the Fifth Circuit still requires the pleading of specific facts to overcome qualified immunity, *Zapata*, 750 F.3d at 484–85, the Court can base its decision about the sufficiency of the complaint on reasonable inferences.

Second, and similarly, a key part of *Farmer* is worth noting: "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–43, 114 S. Ct. at 1981–82 (citations omitted).

Considering these points, and having carefully considered the above law and allegations of the *FAC*, Defendants' motion must be denied. Plaintiff specifically alleges that, "[u]pon intake, the warden's staff interviews prisoners and categorizes them according to their status regarding sexual violence. (*FAC*, ¶ 11, Doc. 11.) Plaintiff further claims that he is a "High Risk Sexual Victim" and that, "On information and belief, Girbaud Eisley had been categorized as a High Risk Sexual Predator by the Warden's staff." (*Id.* ¶¶ 11, 12.) Plaintiff also alleges that the

13

Warden was "responsible for security of the prison, during the events that are the subject of this lawsuit[.]" (*FAC* ¶ 5, Doc. 5.) A reasonable inference from all of these allegations is that the Warden knew from his staff of the risk Eisley posed and the risk Plaintiff faced.

This is particularly true when combined with the specific allegations that the Warden "knew . . .that he was putting a high risk plaintiff in the same line as Eisley, known as a violent rapist"; "knew . . . that offenders like Thomas are at an increased risk of sexual assault from the general population"; "knew . . ., based on his position and training, that Eisley was a sexual predator, and was therefore a heightened threat of sexual[ly] assaulting vulnerable inmates, like a young underweight slightly mentally handicapped teenager like plaintiff"; and "knew . . . of the extreme risks of sexual assault by Eisley on a high risk sexual victim like the plaintiff" (*Id.* ¶¶ 13–16.)

Daniels' knowledge is evident from the fact that Plaintiff was "viciously attacked" by inmates on May 4, 2018, including Eisley (*FAC*, ¶ 17, Doc. 11.) Plaintiff specifically alleges that Daniels "knew . . .that Thomas had just been attacked by Eisley, . . . that Plaintiff had had his nose broken in the attack[,] and that Eisley was a sexual predator." (*Id.* ¶ 21.)

A reasonable jury could conclude from all of these allegations that Warden Grimes and Daniels knew of a substantial risk of harm. At the very least, such knowledge could be inferred from the circumstances and the obviousness of the risk.

Similarly, the *FAC* sufficiently alleges that, despite this knowledge, Grimes and Daniels were deliberately indifferent to the risk Plaintiff faced. That is, they were aware of the substantial risk of harm, yet they disregarded that risk. (*FAC* ¶¶ 13–16, 21–22.)

Lastly, assuming the facts of the *FAC* to be true, Defendants are not entitled to qualified immunity. Every reasonable officer in the Defendants' position would know that their conduct was objectively unreasonable under the circumstances.

*Robertson* does not warrant a different result. There, this Court dismissed an inmate's failure-to-protect claim. Tbe Court relied on the *Farmer* standard and the plaintiff made "no allegation that any defendant was personally aware of a serious threat of potential harm to the plaintiff from the offending co-inmate. Nor [did] the plaintiff allege that he advised any prison employee that he and the offending co-inmate had previously experienced conflict or were currently experiencing conflict." *Robertson*, 2014 WL 688979, at *5. This Court also rejected the plaintiff's reliance on the fact that "the co-inmate may have bragged of killing a co-inmate at another institution more than twenty (20) years previously", as this did "not establish that the co-inmate presented a particular risk of harm to the plaintiff or to any other inmate." *Id.* The Court further explained:

> Even if the co-inmate had in fact committed the offense of which he boasted, many inmates confined at LSP have histories of violent conduct, and prison officials engage in efforts to classify inmates so as to assign them to housing that takes into account their prior histories, their intervening efforts at rehabilitation and self-control, and their conduct while incarcerated. "Prisons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. *Farmer v. Brennan, supra*, 511 U.S. at 858–59 (Thomas, J., concurring*). See also Verrette v. Major*, 2011 WL 3269319, *2 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if the defendant was aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people" and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence"). Even offenders with violent histories are able to obtain low-risk security classifications by exhibiting good behavior over the course of time, and the plaintiff has failed to allege any facts suggesting that the defendants were deliberately indifferent in their classification of the offending co-inmate.

*Id.* This Court concluded: "In the absence of any suggestion that the defendants, by their actions, intended to cause the plaintiff harm or disregarded an obvious threat to the plaintiff's safety of which they were subjectively aware, there is no basis for the imposition of liability against the defendants." *Id.*

Unlike *Robertson*, a reasonable jury could infer from the *FAC* that the Defendants were aware of a serious threat of harm from Eisley. Contrary to merely bragging about a twenty-year-old incident, here, Eisley in fact participated in a vicious attack on the Plaintiff shortly before the rape, yet Plaintiff was housed with Eisley after that attack. This fact, and the other facts highlighted above, make this case more than just a situation of a prison being a dangerous place.

In sum, under the facts alleged, Defendants had knowledge of a substantial risk of harm that Plaintiff faced and yet were deliberately indifferent to that risk. Consequently, Defendants' motion will be denied.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 11) is **DENIED**.

Signed in Baton Rouge, Louisiana, on February 11, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16